In re MARRIAGE OF EMILY S. SUTTON, Petitioner-Appellant, and ROBERT L. SUTTON, Respondent-Appellee.

Third District   No. 3—88—0243

Opinion filed January 13, 1989.—Rehearing denied February 28, 1989 (Barry, J., dissenting).

BARRY, J., dissenting.

J. Brian Heller, of Benassi & Benassi, P.C., of Peoria (A. Lou Benassi, of counsel), for appellant.

Paul Bradshaw, of Peoria, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff appeals from a trial court order dismissing her petition to modify the judgment of legal separation, in which she sought an increase in maintenance. The trial court determined that the judgment was not modifiable without the agreement of the parties. We reverse and remand for further proceedings.

Emily and Robert Sutton were married on December 25, 1942, and Emily filed a petition for legal separation on October 1, 1982. In July of 1983, the parties entered into an ambiguous and carelessly drafted separation agreement which was later incorporated into the judgment of legal separation. The agreement disposed of all property, awarded Emily a cash payment, and established maintenance. The paragraph which incorporates the parties' agreement regarding maintenance provides:

"4. Respondent [Robert] shall pay to Petitioner [Emily] as maintenance the sum of Eleven Hundred Dollars ($1,100.00) per month commencing as of June 1, 1983, and continuing until February, 1984, when Petitioner is first eligible to receive social security. Beginning in February, 1984, Respondent's maintenance payments to Petitioner shall be reduced by the amount of Petitioner's initial monthly social security grant. Pursuant to Section 502(f) of 'An Act in Relation to Marriage and Dissolution of Marriage,' the parties agree that maintenance shall not be reduced as a result of any increases in Petitioner's social se-

curity grant. Respondent shall maintain Petitioner as beneficiary on his retirement income plan provided by Caterpillar Tractor Company to assure the payment of the survivor pension benefits. In no event shall total maintenance go below $1,100 which will include maintenance plus social security."

Additionally, the last paragraph of the agreement states:

"10. Terms of this marital separation agreement shall not be changed or modified without the agreement and consent of both parties."

On February 17, 1988, Emily filed a petition to modify the judgment of legal separation, seeking an increase in the amount of maintenance Robert paid. Robert filed a motion to dismiss the petition. Finding the judgment incorporating the agreement to be nonmodifiable without the parties' consent, the court dismissed Emily's petition. This appeal followed.

■■ At issue is whether the separation agreement precludes judicial modification of the maintenance award without the consent of both parties. To resolve this issue, we must ascertain the intent of the parties based on a fair and reasonable interpretation of the agreement, taking into consideration the language of the entire agreement and the circumstances under which it was made. *In re Marriage of Reidy* (1985), 134 Ill. App. 3d 534, 541.

■■ The Illinois Marriage and Dissolution of Marriage Act (IMDMA) provides that, except for terms concerning the children of a marriage, "the judgment may expressly preclude or limit modification of terms set forth in the judgment if the separation agreement so provides." (Ill. Rev. Stat. 1987, ch. 40, par. 502(f).) Such provisions are intended to allow parties to agree that their future property and maintenance arrangements will not be altered except with their consent and to eliminate uncertainties based on the fear that subsequent motions might increase or decrease their obligations. (*Simmons v. Simmons* (1979), 77 Ill. App. 3d 740.) If the parties to a settlement agreement intend to preclude or limit modification of certain terms, they must express such an intent in clear language. (*In re Marriage of Chalkley* (1981), 99 Ill. App. 3d 478.) Illustrative of language which clearly expresses such an intent is that contained in the agreement in *Simmons*. In that case, the parties' settlement agreement provided, "[I]n no event is the amount of alimony to be modifiable except for death or remarriage of wife," and the court determined the parties' intent to preclude judicial modification was clear. 77 Ill. App. 3d at 741.

■■ The settlement agreement in the case at bar does not express

a similar clear intent to preclude all judicial modification of maintenance. Paragraph 4 of the agreement indicates that the parties anticipated Emily's social security payments and sought to ensure that she received at least $1,100 per month from social security and maintenance payments combined. Specifically referring to section 502(f) of the IMDMA, the agreement further provides that maintenance shall not be reduced as a result of any increases in Emily's social security payments. However, paragraph 4 does not indicate that the parties intended to preclude judicial modification increasing the amount of maintenance Emily receives. Nor does paragraph 4 indicate that the parties intended to preclude judicial modification reducing the amount she receives, as long as her total monthly maintenance is not reduced below $1,100 and the reductions are not related to increases in her social security payments. Emily correctly points out that if they had intended maintenance to be completely nonmodifiable, there would have been no need to include the limits on modification contained in paragraph 4. Therefore, we conclude that the separation agreement clearly expresses the parties' intent to limit judicial modification of maintenance by restricting the grounds on which a reduction can be sought and providing a base below which the amount of maintenance cannot be reduced. We further find that the agreement does not clearly express an intent to preclude all judicial modification of maintenance without the agreement of the parties.

Robert contends that paragraph 10 of the settlement agreement constitutes a waiver of the parties' rights to judicial modification of maintenance as provided in section 502(f) of the IMDMA. We disagree. As discussed above, paragraph 4 of the settlement agreement places certain limits on reductions in maintenance, but does not preclude judicial modification entirely. Paragraph 10 merely prevents modification of the terms of the agreement without the parties' consent. One of the terms which cannot be modified without consent is paragraph 4, which permits modification of maintenance within certain limits. Thus, we conclude that the agreement, read as a whole, does not preclude judicial modification of maintenance without both parties' consent. We recognize that fair-minded persons could interpret this agreement either way. As we view the matter, however, a reasonable reading contemplates the possibility of modifications in the amount of maintenance. Had the parties intended to bar the possibility of potential increases in future maintenance, careful drafting of an agreement could have accomplished that purpose.

For the foregoing reasons, we find that the court erred when it dismissed the petition for modification. The order of the circuit court

of Peoria County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

SCOTT, J., concurs.

JUSTICE BARRY, dissenting:

I cannot agree with the strained construction given the separation agreement by the majority in this case, and I therefore dissent.

It is difficult to imagine language which could more explicitly prohibit judicial modification of support payments than that contained in paragraph 10: "Terms of this marital separation agreement shall not be changed or modified without the agreement and consent of both parties." The majority has disregarded the plain language of this provision and has managed to read into paragraph 4 an agreement to permit judicial modification of the maintenance provisions without consent of both parties. The majority then concludes that the agreement to nonconsensual modification by a court in paragraph 4 is one of the terms that cannot be modified without the consent of both parties under paragraph 10.

By my view, this reasoning is implausible on its face, and it misconstrues the provisions contained in paragraph 4. There is nothing there that would explicitly or implicitly indicate an intention to allow judicial modification of maintenance. Examination of the relevant sentences of paragraph 4, one at a time, will clarify the intention of the parties:

> "Respondent shall pay to Petitioner as maintenance the sum of Eleven Hundred Dollars ($1,100.00) per month commencing as of June 1, 1983, and continuing until February, 1984, when Petitioner is first eligible to receive social security."

This simply says Emily is to receive $1,100 maintenance from Robert each month until she becomes eligible for social security benefits.

> "Beginning in February, 1984, Respondent's maintenance payments to Petitioner shall be reduced by the amount of Petitioner's initial monthly social security grant."

As soon as Emily is eligible for social security benefits, Robert's obligation decreases by the amount of the benefits Emily will receive.

> "Pursuant to Section 502(f) of 'An Act in Relation to Marriage and Dissolution of Marriage,' the parties agree that maintenance shall not be reduced as a result of any increases in Peti-

tioner's social security grant."

Robert's obligation to pay maintenance will not decrease in the event Emily later receives increases in her social security benefits. Thus, any cost of living adjustments would be fully available to Emily.

> "In no event shall total maintenance go below $1,100 which will include maintenance plus social security."

Robert's obligation to pay maintenance could increase in the event Emily's social security benefits would later decrease. In other words, Robert must guarantee Emily a minimum of $1,100 monthly income from maintenance plus social security.

There is not the slightest hint that the parties contemplated a possible judicial modification of these maintenance provisions. To the contrary, the language has been drafted with some care to eliminate the necessity of resort to the court in the event of either an increase or a decrease in Emily's social security income.

The nonmodification provision of paragraph 10 ought to be given effect. I would affirm the trial court.